(166 App. Div. 517)

### GIBBS v. KNICKERBOCKER SAVINGS & LOAN CO.

(Supreme Court, Appellate Division, Second Department. March 5, 1915.)

1. BANKS AND BANKING ⬅290—SAVINGS BANKS—PAYMENT OF OFFICIALS.
    Where a contract for legal services to be rendered a savings bank provided for payment of a sum which would, with the other operating expenses of the bank, exceed the statute limiting the operating expenses of such institutions to 2½ per cent. of the total amount of dues actually received and credited to the members and dividends duly apportioned, plaintiff, having rendered services, may recover an amount equal to the difference between the amount limited by statute and the sum paid for other operating expenses during the year.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1129, 1132½; Dec. Dig. ⬅290.]

2. ASSIGNMENTS ⬅31—WHAT CONSTITUTES.
    Where plaintiff, who was an official of and attorney for a savings bank, and other officials, agreed that, in consideration of the treasurer's surrender of stock to the company for cancellation, they would out of their salaries make certain payments, and, in event their salaries did not reach a given amount, would make the payments individually, there was no assignment of plaintiff's salary, and he was the real party in interest in an action to recover compensation for services.

    [Ed. Note.—For other cases, see Assignments, Cent. Dig. § 61; Dec. Dig. ⬅31.]

3. BANKS AND BANKING ⬅307—SAVINGS BANKS—MERGER—AGREEMENTS.
    Where stock of a savings bank was surrendered and canceled, so as to increase its assets, a merger agreement, approved by the superintendent

of banks, who understood the way the assets were increased, is not invalid, as the result of fraud or conspiracy.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 126, 1212; Dec. Dig. ☞307.]

Appeal from Trial Term, Westchester County.

Action by Herbert H. Gibbs against the Knickerbocker Savings & Loan Company. From an order dismissing counterclaims, and directing verdict in plaintiff's favor, defendant appeals. Affirmed.

See, also, 164 App. Div. 951, 149 N. Y. Supp. 1084.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

T. A. McCarthy, of New York City, for superintendent of banks.

Lee Parsons Davis, of White Plains, for respondent.

RICH, J. The plaintiff brought this action to recover $5,000 for legal services rendered the defendant, commencing February 1, 1909, and continuing for two years. His retainer is shown by a resolution of defendant's directors, adopted February 20, 1907, and read and approved by the stockholders of the company at their annual meeting thereafter held. Second, for a balance of $1,850, alleged to be due him for services rendered defendant as its secretary from February 1, 1906, to February 1, 1910. The amended answer alleges three separate defenses to each alleged cause of action—the first being based upon the provisions of the Banking Law (Consol. Laws, c. 2), limiting the operating expenses of savings and loan companies to 2½ per centum of the total amount of dues actually received and credited to its members and dividends duly apportioned and credited thereon; second, that the plaintiff is not the real party in interest; and, third, that the plaintiff, with other officers and directors of defendant, entered into and carried out a conspiracy to deceive the superintendent of banks and to defraud the defendant and its stockholders. Two counterclaims are pleaded, based upon allegations that the sum of $5,850, received by plaintiff as salary and compensation in 1906, 1907, 1908, and 1909, was obtained fraudulently and in violation of his duty as one of defendant's directors and trustees, and in violation of the provisions of the Banking Law limiting defendant's operating expenses.

The defendant was closed by the superintendent of banks on May 20, 1911. In August following, plaintiff presented his verified claims to the superintendent, who rejected them, and this action was thereupon commenced. At the close of the evidence, plaintiff's counsel moved for a direction of a verdict, and defendant asked that the complaint be dismissed. It was stipulated that the decision of the motions be made by the court, "such decision to have the same force and effect as though it were now rendered and a verdict directed to be entered accordingly."

The court later denied defendant's motions to dismiss, and granted plaintiff's motion to direct a verdict to the extent of $877.68 earned in

the year 1909, $885.98 earned in the year 1910, and $208.33 for the month of January, 1911, with interest, such amounts representing in each of said years the difference between defendant's operating expenses and said 2½ per centum limitation; the defendant's liability to plaintiff exceeding such sums, but a recovery being limited thereto by the statute. Recovery sought for the years 1906, 1907, and 1908 was denied, upon the ground that in each of those years the operating expenses exceeded the statutory limitation, and, although the salary and compensation was earned and unpaid, no recovery therefor could be had. The plaintiff was also given judgment dismissing upon the merits the counterclaims set up in the amended answer. From the order and judgment accordingly entered, this appeal is taken.

[1, 2] Upon the trial the defendant contended that, inasmuch as its operating expenses for the five years covered by the transaction, considered as a whole, exceeded the statutory 2½ per centum limitation, the payment or allowance of plaintiff's claimed arrears of salary and compensation would be illegal, and was prohibited by the statute. The learned trial court overruled this contention, holding that the statute did not prohibit the payment to plaintiff of an amount equal to the difference between the amount limited by the statute and a less sum paid by defendant for other operative expenses in each year in which such operating expenses were less than such limitation. This legal conclusion was correct. At the time Black, defendant's treasurer (to meet the requirement of the superintendent of banks that the assets of the Knickerbocker Company should be increased $10,000 as a condition of his approving the proposed merger of the Provident Company with it), canceled and surrendered $10,000 of the Knickerbocker Company's class C prepaid stock, owned by his mother and himself, the plaintiff, then defendant's secretary, with Molyneaux, its president, and Gerken, one of its directors, entered into an agreement with him which, after reciting the facts in a long preamble, provided:

"And the said Gerken, Molyneaux, and Gibbs, in consideration of the facts recited in the preamble hereto, and of the foregoing agreement of said Black, as well as for the benefit to them thereby accruing, do hereby covenant and agree to and with the said Black that, upon the gift and surrender of the stock as aforesaid, the salary or salaries received by them, or either of them, as officers or agents of said Knickerbocker Savings & Loan Company during the five years ensuing next after the filing of the papers in the above-mentioned merger, as aforesaid, shall be immediately applied by them, and each of them, so receiving such salary or salaries, to the reimbursement of said Black, to the par value of said stock, to wit: Ten thousand dollars ($10,-000) and the interest thereon at six per centum (6%) per annum from and after the filing of said papers, as aforesaid, interest computed semiannually; said Gerken, Molyneaux, and Gibbs hereby assigning said salaries, to the extent named, to said Black. And the said Gerken, Molyneaux, and Gibbs do, for the consideration aforesaid, also covenant and agree to and with the said Black that they will personally guarantee the reimbursement of said Black of said sum of ten thousand dollars ($10,000) and interest, within the said term of five years, if said sum shall not be paid from salaries as above set forth, to the extent of the sum of seventy-five hundred dollars ($7,500.00) and interest thereon, interest computed semiannually."

The defendant contends that this agreement operated to divest plaintiff of all his interest in the salary and compensation sued for, and

vested the legal title thereto in Black, who alone could maintain an action to recover the same. This contention was correctly overruled by the learned trial court. It is clear, I think, from the language used in such instrument, that Black was not entitled under its provisions to plaintiff's salary and compensation in any event until it was actually earned and received by him. The agreement is limited in express terms to turning it over to Black when it shall have been received by plaintiff. It was to pass through his hands and be applied by him, when received. The parties to the agreement, and the learned trial court, so construed it. No notice was given to the company to pay such salary when earned to Black, and he never made any claim of a right to its payment by the company direct to him. Three payments of $1,250 each were made to plaintiff by the company after such agreement became operative, and by him turned over to Black and receipts therefor taken. Black had no remedy or cause of action against the company for such salary. His cause of action for nonpayment to him was against the plaintiff upon his contract agreement. As to the cause of action asserted by plaintiff in this action, he, and not Black, is the real party in interest. The defendant's contention in this respect is without merit, and is not supported by the authorities it cites to maintain its arguments; the facts therein distinguishing them from the case at bar.

[3] The evidence is insufficient to establish defendant's contention upon which its third defense and counterclaims are based, namely, that the agreement evidences fraud and a conspiracy to defraud, and is not sufficient to justify the submission of such question to the jury, or warrant a recovery against the plaintiff for payments actually made him. It is contended in this connection that the plaintiff deceived the superintendent by representing to him that the assets of the Knickerbocker Company would be and later had been increased pursuant to requirement, by a cash payment constituting a donation of $10,000, and that the superintendent, misled by such representation and assuming it to be true, was thereby induced to give his approval to the proposed merger of the two companies. This contention entirely overlooks the uncontradicted fact that, before such approval was given, the superintendent caused an examination of the transaction to be made by one of his examiners, who, as he conceded in his letter of March 6, 1906, informed him that he had examined the books of the company, which "showed that 11 certificates of paid-up stock of said association, amounting to $10,000, had been charged up as withdrawn and the amount credited to reserve or some similar fund." He then says:

"Of course, if these certificates are canceled, as they should have been and must be, the result obtained, so far as a statement of assets and liabilities is concerned, would be the same as if the cash had been paid in."

And in a letter written the next day, the 7th, referring to the matter, he says:

"According to Mr. Allen's statement, the $10,000 was not paid in cash. * * * The merger agreement was, of course, approved by me."

The superintendent, being thus shown to have had full knowledge of the actual transaction, cannot have been misled or deceived, or his approval induced, thereby.

The exceptions do not present reversible error. They are without merit, and the judgment and order must be affirmed, with costs. All concur.